UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| WILLIAM A. BRYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-194-HBG |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16]. Now before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 & 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 & 23]. William A. Brye ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On July 31, 2014, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging disability beginning on April 30, 2013. [Tr. 105, 261, 277]. After his application was denied initially and upon reconsideration,

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

Plaintiff requested a hearing before an ALJ. [Tr. 208]. A hearing was held on October 4, 2016. [Tr. 121–66]. On February 24, 2017, ALJ J. Elaine Burke found that Plaintiff was not disabled. [Tr. 105–16]. The Appeals Council denied Plaintiff's request for review on March 20, 2018 [Tr. 1–7], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on May 18, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

In her February 24, 2017 disability decision, ALJ Burke made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since April 30, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, arthritis, and major knee joint dysfunction (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can sit for six hours and stand and/or walk for four hours total in an eight-hour workday with no more than 30 minutes of continuous sitting, standing, and walking. The claimant is limited to no climbing ladders, ropes, or scaffolds and occasional climbing ramps and stairs, stooping, kneeling, crouching, crawling, and operating foot controls with lower extremities bilaterally; and frequent balancing, reaching, and handling. He should avoid even moderate exposure to vibrations

and workplace hazards, such as dangerous machinery and exposed heights.

6. The claimant is capable of performing past relevant work as a logistics specialist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2013, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 107–16].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

4

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. Plaintiff maintains that the ALJ failed to properly examine the medical record with respect to Listing 1.04. [Doc. 14 at 20–22]. Next, Plaintiff claims that the ALJ failed to provide good reasons for assigning little weight to the opinion of his treating neurosurgeon, William J. Snyder, Jr., M.D. [*Id.* at 12–14], and improperly assigned great weight to the opinion of nonexamining state agency consultant, Gurcharan Singh, M.D. [*Id.* at 15]. Lastly, Plaintiff alleges that the ALJ improperly failed to develop the record after affording great weight to an outdated medical opinion. [*Id.* at 17]. The Court will address Plaintiff's specific allegations of error in turn.

**A.      Listing 1.04**

Plaintiff claims that the ALJ improperly found that he did not meet Listing 1.04, as well as that the ALJ's step three determination is not supported by substantial evidence.  [*Id.* at 20]. Plaintiff maintains that the "blatant lack of analysis in considering whether Plaintiff met[ ] the Listing[,] when the record consistently showed that Plaintiff suffered nerve root compression, is a violation of the ALJ's duty to complete step 3 of her analysis."  [*Id.* at 21].  The Commissioner maintains that the ALJ properly found that "the record did not contain evidence sufficient to meet Listing 1.04," and that Plaintiff fails to establish that his medical impairments met all of the criteria under the listing.  [Doc. 23 at 7].

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that his impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001).  The Listings describe impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).  A claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits, but the claimant has the burden to prove that all of the elements are satisfied.  *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Walters*, 127 F.3d at 529.  Only when an impairment satisfies all of the Listing's criteria will the impairment be found to be of listing level severity.  20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing level severity, the ALJ is tasked with comparing the medical evidence of record with a Listing's requirements.  *Reynolds v. Comm'r of*

*Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011). However, the Sixth Circuit rejected "a heighted articulation standard" with regard to the ALJ's step three finding. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). "If a claimant does not have one of the findings, however, she can present evidence of some medical equivalent to that finding." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). Yet, it is not sufficient to come close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (affirming Commissioner's decision that Plaintiff didn't meet Listing where medical evidence "almost establishes a disability").

Listing 1.04 covers disorders of the spine, including degenerative disc disease, and requires that the disorder result in "compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Listing 1.04(A) further requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* Accordingly, in addition to demonstrating a spinal disorder that results in the "compromise of a nerve root," Plaintiff must show (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss, (4) sensory or reflex loss, and (5) sitting and supine positive straight-leg test results, in order to meet the requirements of Listing 1.04(A). *Id.*

In the disability decision, the ALJ noted that although the medical record established degenerative disc disease, the criteria of Listing 1.04 were not satisfied. [Tr. 109]. Specifically, the ALJ found that "the record is devoid of evidence of nerve root compression, consistent limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness), sensory or reflex loss, spinal arachnoiditis, lumbar spinal stenosis with accompanying

7

ineffective ambulation, or positive straight leg raising test (sitting and supine)." [*Id.*].

Plaintiff challenges the ALJ's brief step three analysis, asserting that the "record included objective medical evidence that the nerve root was likely abutted and displaced, diagnosis [sic] by his treating providers of radiculopathy, and subjective complaints of pain and tingling." [Doc. 14 at 20].

However, "[t]he Sixth Circuit has declined to adopt a blanket rule that remand is required whenever an ALJ 'provides minimal reasoning at step three of the five-step inquiry.'" *Wischer v. Comm'r of Soc. Sec.*, No. 13-cv-180, 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015), *report and recommendation adopted by*, 2015 WL 1107543 (S.D. Ohio Mar. 11, 2015) (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014)). In *Forrest*, the Sixth Circuit upheld the ALJ's conclusory finding at step three for two reasons: (1) the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three; and (2) even if the ALJ's factual findings failed to support his step three findings, the error was harmless because the plaintiff had not shown his impairments met or medically equaled in severity any of the listed impairments. 591 F. App'x at 366.

Plaintiff asserts that the medical record is consistent with evidence of nerve root suppression. However, the Commissioner correctly states that the ALJ largely discussed the evidence cited by Plaintiff throughout the disability decision. For example, the ALJ cited to Plaintiff's outpatient physical therapy initial evaluation at the University of Tennessee Medical Center Rehabilitation Services on September 28, 2016, to claim that Plaintiff "is able to ambulate effectively and has essentially normal range of motion, strength, and tone throughout." [Tr. 108–09]; *see* [Tr. 825]. In the RFC determination, the ALJ cited to a February 28, 2014 MRI which revealed severe multilevel lumbar spondylosis; L3-L4 right paracentral disc extrusion with inferior

migration and severe right neuroforaminal stenosis; facet arthropathy and disc herniations resulting in severe left L3-L4 and L4-L5, moderate to severe right L4-L5, and bilateral L5-S1 neuroforaminal stenosis. [Tr. 112]; *see* [Tr. 369–70]. The ALJ also noted that Plaintiff's physical therapy records demonstrated that his symptoms improved with treatment and "that all of his goals were met when he was discharged from therapy in April 2014," as well as that he was able to stand and walk without difficulty. [Tr. 112]; *see* [Tr. 461, 517]. The ALJ reviewed Plaintiff's complaints of low back pain, but found that progress notes indicated that his symptoms improved with chiropractic treatment, while also noting Plaintiff's diagnoses of degenerative disc disease and radiculopathy. [Tr. 112–13].

Ultimately, substantial evidence supports the ALJ's finding that Plaintiff did not have the requisite limited range of motion of the spine, motor loss accompanied by sensory or reflex loss, as well as positive straight-leg raise testing to meet Listing 1.04. The ALJ cited to multiple physical examination findings showing full range of motion on January 14, 2013, January 8, 2014 and September 28, 2016 [Tr. 108, 111, 113, 114], while also reviewing Plaintiff's limited range of motion in his lumbar spine in July 2013 [Tr. 112], and a decreased extension of his lumbar spine in August 2016 [Tr. 113].

Therefore, the Court finds that the ALJ appropriately reviewed the medical evidence related to Plaintiff's degenerative disc disease, and Plaintiff fails to establish that his medical impairments met every requirement under Listing 1.04. Plaintiff "must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings, rather than a judgment based on all relevant factors for an individual claimant, the

evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing 20 C.F.R. §§ 416.925(d), 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). The ALJ reviewed Plaintiff's improvement in his symptoms after treatment, as well as the objective medical record, to support her finding that Plaintiff did not meet Listing 1.04. *See, e.g.*, *Hood v. Colvin*, No. 2:15-cv-70, 2016 WL 8711709, at *5 (M.D. Tenn. July 8, 2016) (finding Plaintiff failed to demonstrate that the ALJ erred by failing to find her impairments met or equaled Listing 1.04(A) as "the ALJ ultimately relied on the reports of the examining physicians to find that Plaintiff did not meet Listing 1.04(A)"). Accordingly, the Court finds that Plaintiff's allegation of error does not constitute a basis for remand.

## B. ALJ's Treatment of Medical Opinions

### 1. Plaintiff's Treating Physician—Dr. Snyder

Plaintiff claims that the ALJ improperly weighed the medical opinions of record, first asserting that the ALJ failed to provide good reasons for assigning little weight to the opinion of his treating neurosurgeon, William J. Snyder, Jr., M.D. [Doc. 14 at 13]. Plaintiff alleges that the ALJ improperly found that Dr. Snyder's opinion was inconsistent with his treatment notes, as "none of the instances mentioned by the ALJ were in existence at the time of Dr. Snyder's opinion." [*Id.* at 14]. Further, Plaintiff claims that "even if using the entirety of the treatment record dated after Dr. Snyder completed his opinion, there is evidence of medical worsening that would support such a restrictive opinion." [*Id.*].

Dr. Wilson began treating Plaintiff and performed a left L3-L4 far lateral foraminotomy and left L4-L5 far lateral microlumbar discectomy without complications on August 27, 2014. [Tr. 362]. Dr. Wilson subsequently completed a spinal disorder questionnaire on September 29, 2014.

[Tr. 524]. Dr. Wilson noted that Plaintiff's prognosis was good, and that his radiculopathies and muscle weakness improved after surgery. [*Id.*]. Dr. Wilson opined that Plaintiff could sit for five to ten minutes continuously, stand for up to five minutes, and walk for up to ten minutes before it would become necessary to change positions. [Tr. 525–26]. Additionally, Dr. Wilson found that Plaintiff could sit and stand/walk for less than one-hour total in an eight-hour workday, and that he would sometimes need to take unscheduled breaks. [Tr. 526]. Lastly, Dr. Wilson found that Plaintiff had significant limitations in repetitive reaching, handling, or fingering, and that he could frequently lift and carry up to five pounds, occasionally lift and carry up to twenty pounds, but that he could never lift and carry over twenty pounds. [Tr. 527].

In the disability decision, the ALJ reviewed Dr. Snyder's opinion, and first noted the treatment relationship between Plaintiff and Dr. Snyder. [Tr. 114]. However, the ALJ found that "his opinion appears to be too restrictive and inconsistent with the claimant's treatment history showing significant symptoms improvement post surgeries with therapy." [*Id.*]. The ALJ detailed that Plaintiff "consistently" reported that he was able to exercise and walk for several miles a day, and that he was able to relieve his pain quickly by stretching. [*Id.*]. Lastly, the ALJ noted that Plaintiff's physical examinations did not reveal any significant limitations, and afforded little weight to Dr. Snyder's opinion. [*Id.*].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§

404.1527(c); 416.927(c)(2).[2] When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

First, Plaintiff maintains that Dr. Snyder's opinion was the only opinion provided by an examining or treating source in the record. [Doc. 14 at 13]. However, "[a]ny record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (citing 20 C.F.R. §§ 404.157, 416.927; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)). Therefore, the ALJ was not required to accept

---

[2] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

Dr. Snyder's opinion solely because it was delivered by Plaintiff's treating physician.

Plaintiff asserts, however, that the ALJ failed to provide good reasons for discrediting Dr. Snyder's opinion. Plaintiff alleges that although the ALJ found that Plaintiff reported that he was able to exercise, "[t]here is no evidence of any of the treatment notes showing Plaintiff's ability to exercise prior to Dr. Snyder's opinion." [Doc. 14 at 14]. Here, the ALJ properly considered the medical record as a whole, including finding that ALJ's symptoms improved following his surgery with physical therapy. *See, e.g.*, *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 400 (6th Cir. 2018) (noting the ALJ properly found that the claimant's treating physician's opinion was inconsistent with reports that the claimant "had recently shown some improvement"); *Hoover v. Comm'r of Soc. Sec.*, No. 1:14-CV-90, 2015 WL 1011390, at *9 (N.D. Ohio Mar. 5, 2015) ("Here, the ALJ properly explained that he gave little weight to Dr. Poolos opinion because it contained a conclusory statement that Plaintiff could not work; the opinion was offered only a few months following surgery; and Plaintiff subsequently continued to make significant improvements . . . .").

Earlier in the disability decision, the ALJ reviewed Plaintiff's testimony and cited to treatment records which indicated that he was able to regularly exercise by walking on June 12, 2014 [Tr. 407], November 5, 2014 [Tr. 542], and November 24, 2015 [Tr. 566]. The ALJ also found that surgery and conservative treatment, through injections and therapy, "have been effective in significantly improving the claimant's symptoms." [Tr. 110]. Additionally, the ALJ cited to physical examinations on November 7, 2013 and November 5, 2014 which "showed that the claimant had normal movements without pain and normal gait, station, posture, strength and tone without any instability, subluxation, or laxity." [Tr. 111]; *see* [Tr. 411, 545]. Therefore, the Court finds that the ALJ appropriately found that Plaintiff's improvement following his surgery with Dr. Snyder, continued exercise through walking, and improvement through physical therapy

provided support for her conclusion that Dr. Snyder's opinion was inconsistent with the medical record.

Plaintiff points to his subsequent car accident in the year after his surgery with Dr. Snyder, as well as the "objective evidence of worsening back problems" demonstrated in a May 27, 2015 MRI. [Doc. 14 at 15]. In the disability decision, the ALJ extensively reviewed the medical record with respect to Plaintiff's complaints of back, neck, and shoulder pain both before and after his surgery with Dr. Snyder, as well as following his car accident in April of 2015. [Tr. 112–13]. The ALJ detailed that treatment notes from Plaintiff's orthopedic follow-up appointment with Dr. Wilson noted that Plaintiff's radicular symptoms improved following his surgery [Tr. 112]; *see* [Tr. 512]. The ALJ also reviewed the May 27, 2015 MRI cited in Plaintiff's brief, summarizing that the MRI displayed "significant interval progressive degenerative change with slight increase in retrolisthesis of L2 with respect to L3 and L3 with respect to L4," as well as that "[e]nlarging disc extrusions at L3-L4 and L4-L5 resulted in moderate to severe central canal and bilateral recess stenosis at those levels." [Tr. 112]; *see* [Tr. 585–86]. The ALJ contrasted the results of this MRI with Plaintiff's subsequent report on June 29, 2015 that he was feeling "back to normal" after physical therapy, as well an April 11, 2015 x-ray showing unremarkable sacroiliac joints. [Tr. 112]; *see* [Tr. 570, 778]. Further, the ALJ detailed that although Plaintiff reported increased back pain after his car accident, he denied any problems with his lower extremities and Dr. Snyder "indicated that the results of the lumbar MRI showing [an] increase in the disc bulge with canal stenosis would be expected to produce neurogenic claudication or radiculopathy, but that the claimant did not have any lower extremity symptoms." [Tr. 112–13].

The ALJ also reviewed Plaintiff's back and neck pain from August 2015 to March 2016, first noting that Plaintiff had increased range of motion of his left shoulder, that he continued to

walk with exercise, but had to stop and stretch every ten minutes to relieve pain, and that while he had decreased extension of his lumbar spine, there was not tenderness on examination and Plaintiff's straight leg raise test was negative. [Tr. 113]; *see* [Tr. 562, 602, 825]. Lastly, the ALJ reviewed how "[p]hysical therapy records show that the claimant's symptoms improved with therapy" beginning with his initial physical evaluation on March 21, 2016. [Tr. 113].

Plaintiff also claims that the ALJ ignored several of his asserted limitations in the credibility determination and analysis of Dr. Snyder's opinion; as, for example, the ALJ stated that Plaintiff could watch television, read, prepare simply meals, cook, do laundry, and take care of his dog, while Plaintiff asserts that he testified that he did not cook beyond the preparation of simple meals and did not handle any household chores. *See* [Doc. 14 at 18]. Further, Plaintiff asserts that while the ALJ stated that Plaintiff spends time with others on the phone and in person, as well as drives a car, he testified that his ability to socialize was compromised and he suffered increased pain from being in a car. [*Id.* at 18–19]. Lastly, Plaintiff alleges that the ALJ used evidence of his improvement after surgery as a reason to discount Plaintiff's testimony and Dr. Synder's opinion, despite the fact that "there was objective medical evidence that showed that Plaintiff's condition was worsening after the date of the surgery." [*Id.* at 19].

"The ALJ may not pick and choose portions of opinions that support his findings without providing a clear analysis of why certain portions are rejected while other are accepted." *Perez v. Comm'r of Soc. Sec.*, No. 1:17-cv-2311, 2018 WL 5620094, at *14 (N.D. Ohio Oct. 30, 2018). However, the Court finds that the ALJ did not mischaracterize Plaintiff's testimony or treatment records; rather, she resolved inconsistent evidence in the medical record and properly detailed Plaintiff's reported daily activities and noted conservative treatment and improvement after surgery and through physical therapy. Although Plaintiff would interpret the medical evidence

differently, the Court finds that the ALJ's determination was within her "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

Ultimately, the Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision to assign little weight to Dr. Snyder's opinion, and the ALJ's findings "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Here, the Court finds that substantial evidence supports the ALJ's assignment of little weight to the opinion of Plaintiff's treating physician, as the ALJ provided good reasons for finding that Dr. Snyder's opinion was not consistent with Plaintiff's treatment history and medical records showing substantial improvement after therapy. Additionally, the ALJ reviewed the objective evidence which Plaintiff claims was consistent with Dr. Snyder's opinion, and examined the consistency of Dr. Snyder's opinion with the entire medical record. Therefore, Plaintiff's assignments of error do not constitute a basis for remand.

### 2. Nonexamining State Agency Consultant—Dr. Singh

Plaintiff challenges the ALJ's assignment of great weight to the opinion of the

nonexamining state agency consultant, Dr. Singh, largely because Dr. Singh rendered his opinion on April 30, 2015—"almost a year and a half prior to the hearing held on October 4, 2016." [Doc. 14 at 15]. Therefore, Plaintiff asserts that Dr. Singh's opinion should have been granted less weight because he "did not have the entirety of the record before him at the time of determination." [*Id.*].

Dr. Singh reviewed the medical evidence of record at the reconsideration level of the agency's review on April 30, 2015. [Tr. 187]. Dr. Singh opined that Plaintiff could occasionally lift and/or carry up to twenty pounds, frequently lift and/or carry up to ten pounds, that Plaintiff could stand and/or walk for a total of four hours, and that he could sit for about six hours in an eight-hour workday. [Tr. 185]. Further, Dr. Singh found that Plaintiff was limited in his lower extremities in the ability to push or pull, including operating hand or foot controls. [*Id.*]. With respect to Plaintiff's postural limitations, Dr. Singh opined that he could frequently balance, as well as that he could occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. [Tr. 185–86]. When detailing Plaintiff's exertional limitations, Dr. Singh also provided specific evidence that supported her conclusions, including noting Plaintiff's degenerative disc disease post microdiscectomy, good range of motion and normal gait, and that he was able to hike and walk several miles weekly. [Tr. 185]. Additionally, Dr. Singh noted that Plaintiff had increased left knee pain after a fall, but an x-ray and examination was "intact other than effusion," and the resolution was expected to baseline with nonsteroidal anti-inflammatory medication and conservative care. [*Id.*].

In reviewing the opinion, the ALJ noted that Dr. Singh provided specific reasons for her opinion about Plaintiff's RFC, "showing that the opinion was grounded in the evidence of record, including careful consideration of the objective medical evidence and the claimant's allegations

regarding symptoms and limitations." [Tr. 115]. The ALJ afforded great weight to the opinion, as it was "consistent with [Plaintiff's] treatment history showing significant symptoms improving with surgeries and therapy, imaging studies, physical examinations findings, and reported extensive activities of daily living." [*Id.*].

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3).

"[B]efore an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakely*, 581 F.3d at 409). The Sixth Circuit has found that an ALJ satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion, and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (citing *Blakley*, 581 F.3d at 409).

Here, the Court has already reviewed the ALJ's discussion of the medical record following Plaintiff's far lateral foraminotomy and left L4-L5 far lateral microlumbar discectomy which was performed on August 27, 2014. The ALJ detailed Plaintiff's recovery following his surgery, reports of back, neck, and shoulder pain, as well as physical therapy records and treatment notes. Further, Plaintiff fails to point to any portion of the medical record after Dr. Singh's opinion that the ALJ failed to review or that was in conflict with Dr. Singh's opinion.

Accordingly, although Dr. Singh did not review Plaintiff's progress and recovery from surgery, as well as increased reports of pain, the record reflects that the ALJ made an independent determination based on all the medical evidence and that the ALJ's analysis spanned the entire record. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the nonexamining state agency consultant's opinion which did not review the entire record as "the ALJ's own analysis clearly spanned the entire record"). Therefore, the ALJ "subjected [Dr. Singh's] opinion to scrutiny" sufficient to find that she considered that these nonexamining state agency consultants did not review the entire record. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016).

## C.      ALJ's Duty to Develop the Record

Plaintiff also claims that the ALJ improperly failed to develop the record after she granted little weight to his treating physician's opinion, and that the nonexamining state agency consultant's opinion was outdated. [Doc. 14 at 16]. Plaintiff asserts that "[f]ailure to do so, necessitated the ALJ to play doctor and determine the medical importance of over a year's worth of medical records in determining Plaintiff's RFC." [*Id.*]. The Commissioner responds that the ALJ is not required to base her RFC on a medical opinion and appropriately considered the medical and non-medical evidence in the record in the RFC determination. [Doc. 23 at 17].

While the claimant bears the ultimate burden of establishing that he is entitled to disability benefits, the ALJ has an affirmative duty to develop the factual record upon which his decision rests, regardless whether the claimant is represented by counsel. *See, e.g., Wright–Hines v. Comm'r of Soc. Sec.,* 597 F.3d 392, 397 (6th Cir. 2010) ("This court has also long recognized an ALJ's obligation to fully develop the record.") (citation omitted); *Lashley v. Sec'y of Health and Human Servs.,* 708 F.2d 1048, 1051 (6th Cir. 1983) (stating the ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing").

Plaintiff relies upon *Deskin v. Commissioner of Social Security*, where the Northern District of Ohio stated:

> As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (internal citation and quotations omitted). "[H]owever, . . . the *Deskin* case has been criticized as being overly broad by other courts, including the Northern District of Ohio." *Johnson v. Saul*, No. 1:18-0041, 2019 WL 3647058, at *4 (M.D. Tenn. July 19, 2019) (internal citations omitted), *report and recommendation adopted by*, 2019 WL 3574250 (M.D. Tenn. Aug. 6, 2019). Therefore, *Deskin* has been interpreted to detail that "[s]uch general rule 'applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence.'" *Snell v. Comm'r of Soc. Sec.*, No. 3:18-CV-173, 2019 WL 3406435, at *3 (S.D. Ohio July 29, 2019) (quoting *Kizys v. Comm'r of Soc. Sec.,* 3:10-

CV-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011)).

The first circumstance described in *Deskin* does not apply in the present case, as the ALJ considered Dr. Snyder and Dr. Singh's opinions. Therefore, Plaintiff argues that Dr. Singh's April 30, 2015 opinion was outdated at the time of the October 4, 2016 hearing. However, the Court does not find that the ALJ's RFC determination was based on an "outdated" medical source opinion "that [did] not include consideration of a critical body of objective medical evidence." *Kizys*, 2011 WL 5024866, at *2.

The ALJ did not interpret "raw medical data," such as MRI results, and translate that date into functional limitations. *See Deskin*, 605 F. Supp. 2d at 912. Rather, as the Court has already detailed, the ALJ reasonably relied upon Dr. Singh's opinion detailing Plaintiff's physical condition after his surgery, as well as physical therapy records showing Plaintiff's symptoms improved with therapy and his treating physicians recommended conservative treatment. *See Colaner v. Comm'r of Soc. Sec.*, No. 12-CV-00716, 2013 WL 5487037, at *4 (S.D. Ohio Sept. 30, 2013) ("Rather, an ALJ has sufficiently developed the record, and may avoid a *Deskin* remand, when the ALJ acts based on *some* medical expert opinion evidence."); *Willaman v. Comm'r of Soc. Sec.*, 5:12–CV–180, 2013 WL 877126, at *6 (N.D. Ohio Mar. 7, 2013) (holding that unlike *Deskin,* the ALJ "did not interpret raw medical data. Instead, the ALJ's decision was based on his review of all the medical opinion evidence, particularly the opinions of the two state agency physicians who reviewed Willaman's records and opined regarding his functional limitations"). The ALJ summarized the medical record to note that Plaintiff reported improvement through physical therapy after his surgery, that he was doing well with his back pain until his motor vehicle accident, and Plaintiff's neurologist noted that his symptoms had improved and advised Plaintiff to continue with conservative treatment, as well as reviewed Plaintiff's reported daily activities to

his primary care physician. [Tr. 112–14]; *see, e.g.*, *Raber v. Comm'r of Soc. Sec.,* 4:12–CV–97, 2013 WL 1284312, at *17 (N.D. Ohio Mar. 27, 2013) ("Though Plaintiff's medical record included some records post-dating Dr. Stock's assessment that he therefore could not have considered, the Court finds these did not so change the medical evidence regarding Plaintiff's condition as to render Dr. Stock's opinion outdated. Specifically, records from 2010 showed Plaintiff continued to undergo radiofrequency treatment and knee injections and continued to report improvement.").

Ultimately, the ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ). The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 416.917. Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *see Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n.3 (6th Cir. 2009) ("[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status[.]").

Here, the Court finds that the ALJ did not fail to develop the record in this case, and that the evidence that Dr. Singh did not consider was not enough to constitute a "critical body of objective medical evidence." *Kizys v. Comm'r of Soc. Sec.,* 3:10-CV-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011); *see, e.g.*, *Raber*, 2013 WL 1284312, at *17 ("[H]ere, the evidence related to Plaintiff's condition after the consultative review covered roughly eleven months and showed she was reporting improvement or relief through treatment and did not want surgery.").

Accordingly, Plaintiff's allegation of error does not constitute a basis for remand. *See, e.g.*, *Adams v. Colvin*, No. 1:14-CV-2097, 2015 WL 4661512, at *16 (N.D. Ohio Aug. 5, 2015) ("While Adams correctly notes that approximately ten months elapsed between Dr. Torello's opinion and the ALJ's decision, she has not demonstrated that the additional records regarding Adams' colostomy closure and subsequent treatment for wound infection so changed the medical evidence regarding her physical impairments that it rendered Dr. Torello's opinion outdated.").

## V.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 13**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge